UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **BLAINE CHIASSON** | **CASE NO. 6:16-CV-00968** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **BRAND ENERGY SOLUTIONS, LLC, ET AL.** | **MAGISTRATE JUDGE HANNA** |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [ECF No. 111] filed by Defendant M-I LLC, d/b/a M-I SWACO, a Division of Schlumberger Technology Corporation (hereinafter, "M-I"). Pursuant to its motion, M-I seeks dismissal of all claims brought against it by Plaintiff Blaine Chiasson. For the following reasons, the motion is GRANTED and all claims against M-I will be DISMISSED WITH PREJUDICE.

## I.
### BACKGROUND

Plaintiff brings this suit in admiralty for personal injuries allegedly incurred due to a slip and fall on March 22, 2016, while working onboard the WEST CAPRICORN, a semi-submersible drilling rig located off the coast of Louisiana and owned by Defendant Seadrill Americas, Inc. ("Seadrill"). [ECF No. 111-2 at ¶¶ 1, 24; ECF No. 1-4 at 116]. At the time of the incident, Plaintiff was employed by Brand Energy Solutions, LLC ("Brand Energy").[1] [ECF No. 111-2 at ¶ 18; ECF No. 106]. In March of 2016, Seadrill contracted with Defendant M&M Industrial Services, Inc. ("M&M) to provide scaffold builders to facilitate maintenance work on the WEST CAPRICORN's mud tanks. [ECF No. 111-2 at ¶ 15; ECF No. 120-2]. M&M in turn contracted with Brand Energy

---

[1] Brand Energy and its Insurer have intervened in this suit to recover from Defendants amounts paid (and amounts to be paid) to Plaintiff in longshore benefits. [ECF No. 106].

to erect the scaffolding in the mud tanks. *Id.* at ¶ 17. On Plaintiff's second day of work, he slipped in drilling mud while working in Reserve Mud Tank No. 5, resulting in injuries to his knee, hip and back. [ECF No. 111-3 at 2; ECF No. 116 at 2; ECF No. 111-8 at 20]. As to Movant M-I, Plaintiff contends it is liable for his injuries due to its alleged failure to remove drilling mud from Reserve Mud Tank No. 5 in February 2016, when it was working onboard the rig. [ECF No. 63 at ¶ 18].

Prior to Plaintiff's accident, BP Exploration and Production, Inc. ("BP") had chartered the WEST CAPRICORN for drilling operations. [ECF No. 111-2 at ¶ 2; ECF No. 111-6 at 6-7]. BP contracted with M-I to provide drilling fluids. [ECF No. 111-2 at ¶ 3]. Approximately two months prior to Plaintiff's accident, BP's charter was ending and it was preparing the vessel for return to Seadrill. [ECF No. 120-7 at 4]. Accordingly, M-I removed its drilling mud, and another BP contractor, Defendant Ecoserv, LLC ("Ecoserv"), cleaned out the vessel's eight mud tanks.[2] [ECF No. 111-3; ECF No. 111-6 at 8-9]. According to the testimony of M-I, Ecoserv and Seadrill, after Ecoserv cleaned a tank, the Ecoserv supervisor would contact the M-I mud engineer who would inspect the tank. [ECF No. 111-3 at 2]. Once the Ecoserv supervisor and the M-I engineer were satisfied the tank was clean and dry, the Seadrill derrickman would inspect the tank. [*Id.* at 2-3; ECF No. 111-6 at 2]. If satisfied the tank was clean and dry, the derrickman would place the hatch cover back on top of the tank to seal it. [ECF No. 111-3 at 3]. As to Reserve Mud Tank No. 5, the Ecoserv supervisor testified that Ecoserv cleaned the tank from January 31 to February 1, 2016. [ECF No. 111-4 at 12]. When he was satisfied the tank was clean and dry, he contacted the M-I mud engineer. *Id.* at 16. The M-I mud engineer inspected Tank No. 5 on February 3, 2016 and

---

[2] According to the record testimony, after completion of a job, M-I would remove as much drilling mud as it could for re-use. Ecoserv would then clean out any drilling mud remaining in the tanks. [ECF No. 111-6 at 8-9].

found the tank clean and dry. [ECF No. 111-5 at 3-6; *see also* ECF No. 111-10]. After Seadrill confirmed the tank was clean, it was sealed by closing the hatch. [ECF No. 133-3 at 10]. Ecoserv finished the cleaning process and left the ship, along with the M-I mud engineer, on February 8, 2016. [ECF No. 111-3 at 3].

After BP turned the vessel back over to Seadrill, Seadrill began preparations for stacking the vessel. [ECF No. 111-3 at 2, 3]. On February 15, 2016, Seadrill performed another inspection of all tanks on the ship, as it planned to conduct maintenance work on some of the tanks while the vessel was stacked. *Id.* at 3. During this inspection, the ship's logs indicate Seadrill found drilling mud in Reserve Mud Tank No. 7. [ECF No. 111-3 at 3; ECF No. 111-6 at 11-12]. Accordingly, Seadrill ordered that all tanks be reopened to reinspect for drilling mud. [ECF No. 116; ECF No. 116-2 at 25]. Seadrill's Offshore Installation Manager ("OIM") testified that from a review of the daily drilling reports, it appears that all other tanks were found to be clean. [ECF No. 120-7 at 27-28]. The OIM additionally testified that the WEST CAPRICORN's plumbing system includes isolation valves that are used to prevent liquids from entering a tank. [ECF No. 116-5 at 3-4]. The valves for the pipes are located outside of the tanks, they are locked, and only Seadrill personnel have access to the valves. *Id.* at 5, 13. During the cleaning process, the valves are shut off. *Id.* at 3. The OIM testified that once a tank was clean, dry and sealed, the only way for mud to re-enter the tank was if Seadrill personnel opened a valve.

On March 21, 2016, Plaintiff arrived on the vessel to begin erecting scaffolding in the tanks to facilitate Seadrill's maintenance work. Plaintiff testified it was common to be on alert for slipping hazards when working in mud tanks, and he testified drilling mud was present in the tank in which he worked the first day. [ECF No. 111-8 at 1; ECF No. 111-2 at ¶ 22]. Accordingly, Plaintiff requested and received rubber boots from Seadrill. [ECF No. 111-8 at 22; ECF No. 120-

3 at 12]. On Plaintiff's second day of work, he was advised during a Job Safety Analysis meeting that the tanks were slippery. [ECF No. 111-8 at 1-2, 20-21; *see also* ECF No. 111-11 at 2]. Plaintiff testified that he worked in Tank No. 5 for approximately nine hours that day and climbed into and out of Tank No. 5 approximately six times without incident. [ECF No. 111-8 at 8-9, 21]. However, on his last trip into the tank, Plaintiff stepped onto the deck of the tank, turned and took a step towards the tank's fixed ladder, and as he stepped his foot slipped in drilling mud resulting in his injuries. [ECF No. 111-8 at 16-18]. Plaintiff asserts M-I is liable for his injuries due to its alleged failure to remove all drilling mud from Reserve Mud Tank No. 5 in February 2016. M-I now seeks dismissal of Plaintiff's claims.

## II.
## APPLICABLE LAW

### A.    Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party). "Credibility determinations are not part of the summary judgment analysis." *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

**B.     Maritime Negligence**

"It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generate Transatlantique*, 358 U.S. 625, 630 (U.S. 1959); *see also Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir.1980) (a plaintiff in a maritime tort case "is owed a duty of ordinary care"). To establish negligence under general maritime law, a plaintiff "must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by plaintiff, and a causal connection between defendant's conduct and the plaintiff's injury." *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir.1991). "Whether a defendant owes a plaintiff a legal duty is a question of law." *Canal Barge Co., Inc. v. Torco Oil*

*Co.*, 220 F.3d 370, 376 (5th Cir.2000) (quoting *Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 333 (5th Cir. 1993)). "Determination of the tortfeasor's duty, and its parameters, is a function of the court." *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987). Whether a party owes a duty to another depends on a variety of factors, "most notably the forseeability of the harm suffered by the complaining party." *Canal Barge* at 377 (quoting *Consolidated Aluminum* at 67). "Duty . . . is measured by the scope of the risk that negligent conduct foreseeably entails." *Id.* (quoting *Consolidated Aluminum* at 67) (alterations in original).

## III.
### ANALYSIS

M-I makes two arguments in support of its motion. First, it argues it owed no duty to employees of a third-party performing work on the WEST CAPRICORN more than a month after M-I completed its job. [ECF No. 111-3 at 5]. Second, M-I argues there is no causal connection between the work it performed in February of 2016 and the condition of Reserve Tank No. 5 the following March, contending the presence of mud on the day of Plaintiff's accident "could only be due to Seadrill personnel opening up a valve," thereby allowing liquids to enter the tank. *Id.* at 5-6. Plaintiff responds that M-I, as the drilling mud operator, owed him a duty "to make sure that all of M-I's mud was removed from the rig and the rig was cleaned of all drilling mud." [ECF No. 116 at 1]. According to Plaintiff, "[t]hat did not occur in this case," and therefore M-I breached its duty. *Id.* at 1, 7. While Plaintiff concedes there is no evidence establishing "exactly how and or why mud was in Reserve Mud Tank No. 5 on March 22, 2016," he nevertheless assumes that because M-I was responsible for ensuring all mud was removed from the vessel in February 2016, and because Plaintiff slipped and fell in drilling mud on March 22, 2016, the only possible explanation is that "Plaintiff's injuries were the direct result of M-I failing to clean all the mud

from the rig."[3] *Id.* at 7-9. As to M-I's argument that the presence of mud in Tank No. 5 on the day of Plaintiff's accident must be due to the actions of Seadrill, Plaintiff responds that contention "is an issue of fact for the jury to determine." [ECF No. 116 at 8].

The Court finds Plaintiff has failed to carry his burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. First, the Court finds M-I owed no duty to Plaintiff. M-I and Brand Energy were each independent contractors who shared no common principal. Under general maritime law, an independent contractor owes no duty to employees of a fellow independent contractor unless, at the very least, the fellow independent contractor exercised "operational control" over the work the employee performed.[4] *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989). The operational control test is not satisfied unless it is shown that the independent contractor determined the method by which the employees were to perform their work and instructed them accordingly. *Id.* at 1471-72. In this matter, M-I had no oversight authority over Brand Energy employees and was not even present on the vessel at any time during Brand Energy's operations. Simply put, the Court finds any duty owed by M-I did not encompass the risk that Plaintiff would injure himself by performing an admittedly unsafe action that he voluntarily undertook without any direction to do so from M-

---

[3] Plaintiff appears to be making a *res ipsa loquitur*-type argument. However, that doctrine applies only where "the instrumentality causing the injury was under the exclusive control of the defendant." *See e.g. U.S. v. Nassau Marine Corp.*, 778 F.2d 1111, 1115-16 (5th Cir. 1985). As M-I was not in exclusive control of the vessel, that doctrine is unavailable to Plaintiff.

[4] As set forth in *Landry v. Huthnance Drilling Co.*, the general rule in maritime law is that "[a] principal is not liable for the torts of an independent contractor unless the principal exercises operational control over or expressly or impliedly authorizes the independent contractor's actions." 889 F.2d 1469, 1471 (5th Cir. 1989). *Landry* addressed a suit by an employee of an independent contractor against another independent contractor, alleging their common principal authorized the independent contractor to exercise authority over plaintiff's employer. *Id.* Under such a scenario, the court stated, "We need not decide whether an independent contractor may be sued by the employee of another independent contractor because the elements which establish liability under the operational control test are lacking." *Id.*

I. *See e.g. Skinner v. Schlumberger Technology Corporation*, 655 Fed.Appx 188, 193 (5th Cir. 2016); *Thibodeaux v. M-I, LLC*, 2009 WL 1310792, *8 (W.D.La. May 8, 2009).

Second, even assuming for purposes of this motion that M-I owed Plaintiff a duty of reasonable care, Plaintiff has failed to show M-I breached that duty. Plaintiff asserts M-I failed to ensure Reserve Mud Tank No. 5 was properly cleaned in February 2016, thereby creating an unreasonably dangerous condition existing on March 22, 2016 which caused Plaintiff's injuries. However, M-I has pointed to evidence showing Tank No. 5 was clean and dry at the time it left the vessel, and Plaintiff cites no evidence supporting a different conclusion.[5] A non-movant's burden on summary judgment "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations, quotation marks omitted). Courts do not "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (emphasis omitted).

Finally, even assuming M-I owed Plaintiff a duty which it breached, there is insufficient evidence showing a causal connection between M-I's purported breach and Plaintiff's injury. Under general maritime law, M-I's negligence is actionable only if it is a "legal cause" of Plaintiff's injuries. *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992). "[L]egal cuase is something more than 'but for' causation, and the negligence must be a 'substantial factor' in the injury." *Id.* (alterations in original) (quoting *Thomas v. Express Boat Co.*, 759 F.2d 444, 448 (5th Cir. 1985)). In this matter, the evidence shows it was not uncommon for

---

[5] Indeed, even Plaintiff's liability expert, Dennis R. Howard, finds Ecoserv and M-I properly cleaned Reserve Mud Tank No. 5 in February 2016. [ECF No. 133-13 at 6]. According to his investigation, two days after Plaintiff's accident, it was discovered "that valves into Reserve Mud Pit #5 had not been isolated." *Id.* at 7.

Plaintiff to work in slippery conditions, Plaintiff and his supervisor were specifically aware that drilling mud was on the floor of Tank No. 5 causing it to be slippery, and Plaintiff took extra precautions due to those slippery conditions. [ECF No. 111-2 at ¶ 22; ECF No. 111-7 at 4-5; ECF No. 111-8 at 20-22] Plaintiff testified he was vested with "stop work" authority but declined to exercise that authority despite his concern about the condition of the tank. [ECF No. 120-3 at 6, 11]. Plaintiff has made no argument that he would have conducted his work in a different manner had M-I specifically advised him of the presence of drilling mud in Tank No. 5. In sum, Plaintiff has failed to show any causal connection between M-I's failure to advise Plaintiff of that which he already knew – that Tank No. 5 was slippery – and Plaintiff's injury.

For the reasons set forth herein, M-I's Motion for Summary Judgment [ECF No. 111] is GRANTED, and all claims against M-I will be DISMISSED WITH PREJUDICE.

THUS DONE in Chambers on this 11th day of February, 2020.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE